**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

ADAM BETTENCOURT, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CALL-ON-DOC.COM, INC.,

Defendant.

Case No. 3:26-cv-253

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Adam Bettencourt ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Call-On-Doc.Com, Inc. ("Defendant"). Plaintiff alleges the following upon information and belief and based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1. This is a data breach class action against Defendant for its failure to adequately secure and safeguard confidential and sensitive information held throughout the typical course of business of Plaintiff and the Class.

2. Plaintiff and the proposed Class members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII") including names, dates of birth, physical addresses, and email addresses, and Protected Health Information ("PHI") including medical diagnoses, prescription records, and healthcare consultation categories (e.g., Men's/Women's Health, Dermatology) (collectively "Private Information"), that was impacted in a data breach that occurred in December 2025 (the "Data

Breach" or the "Breach").

3. On January 22, 2026, a threat actor known by the alias "iProfessor" posted a database including over 1.1 million of Defendant's patient records for sale on a dark web forum. The actor claims to have acquired the records from Defendant's network in December 2025.[1]

4. Defendant has not acknowledged the Data Breach or notified impacted individuals that their sensitive personal data has been exposed.

5. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and the Class, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

6. Plaintiff and the Class have taken reasonable steps to maintain the confidentiality and security of their PII and PHI.

7. Plaintiff and the Class reasonably expected Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

8. Defendant, however, breached its numerous duties and obligations by failing to implement and maintain reasonable safeguards; failing to comply with industry-standard data security practices and laws and regulations governing data security; failing to properly train its employees on data security measures and protocols; failing to timely recognize and detect unauthorized third parties accessing its system and that substantial amounts of data had been compromised; and failing to timely notify the impacted Class.

9. In this day and age of regular and consistent data security attacks and data

---

[1] *CallOnDoc Suffers Breach According to Dark Web Reports*, UpGuard (Jan. 27, 2026), https://www.upguard.com/news/callondoc-data-breach-2026-01-22.

breaches, and given the sensitivity of the data entrusted to Defendant, this Data Breach is particularly egregious and foreseeable.

10. By implementing and maintaining reasonable safeguards and complying with standard data security practices, Defendant could have prevented this Data Breach.

11. Plaintiff and the Class are now faced with a present and imminent lifetime risk of identity theft or fraud.

12. PII and PHI hold significant value to cybercriminals. As a direct result of Defendant's Data Breach, Plaintiff's and the Class's Private Information has been exposed to cybercriminals and may already be offered for sale on the dark web, where it can be accessed and exploited to the detriment of Plaintiff and the Class. Plaintiff and the Class face a current and lifetime risk of identity theft or fraud as a direct result of the Data Breach.

13. The modern cyber-criminal can use the PII and other information stolen in cyber-attacks to assume a victim's identity when carrying out various crimes such as:

a. Obtaining and using a victim's credit history;

b. Making financial transactions on their behalf and without their knowledge or consent, including opening credit accounts in their name or taking out loans;

c. Impersonating them in written communications, including mail, e-mail and/or text messaging;

d. Stealing, applying for and/or using benefits intended for the victim; and

e. Committing illegal acts while impersonating their victim which, in turn, could incriminate the victim and lead to other legal ramifications.

14. Plaintiff's and Class's Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiff's and Class's

Private Information.

15. As a result of Defendant's failure to respond to the Data Breach, Plaintiff and the Class had no idea their Private Information had been compromised, and that they were, and continue to be, at significant and imminent risk of identity theft, fraud and various other forms of personal, social and financial harm. The risk will remain for their respective lifetimes because of Defendant's negligence.

16. Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised in the Data Breach as a direct consequence for Defendant's failure to:

(i) adequately protect individuals' PII and PHI entrusted to it;

(ii) warn individuals of its inadequate information security practices; and

(iii) effectively monitor its websites and platforms for security vulnerabilities and incidents.

17. Defendant's conduct amounts to negligence and violates state and federal statutes and guidelines.

18. As a result of the Data Breach, Plaintiff and the Class suffered ascertainable losses, including, but not limited to, a loss of privacy. These injuries include:

(i) the invasion of privacy;

(ii) the compromise, disclosure, theft, and imminent unauthorized use of Plaintiff's and the Class's PII and PHI;

(iii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII and PHI;

(iv) lost or diminished inherent value of PII and PHI; out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time or wages; and

(v) the continued and increased risk to their PII and PHI, which remains available on the dark web for individuals to access and abuse and remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class.

19. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security practices employed by Defendant.

20. Accordingly, Plaintiff, on behalf of himself and the Class, brings this action individually and on behalf of a Class of similarly situated individuals against Defendant for negligence, negligence per se, breach of fiduciary duty, breach of contract, unjust enrichment, invasion of privacy, and declaratory judgment. Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity by law, or any other relief the Court deems just and appropriate.

**PARTIES**

21. Plaintiff Adam Bettencourt is a citizen and resident of California. Plaintiff has been a patient of Defendant since 2022.

22. Defendant is a Texas corporation with its principal place of business at 8355

Walnut Hill Lane, Suite 200B, Dallas, Texas 75231. Defendant is an online telemedicine platform that collected and continues to collect the PII and PHI of its patients throughout its usual course of business operations.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), as the amount in controversy exceeds the $5,000,000 jurisdictional minimum of the Class Action Fairness Act, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

24. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this jurisdiction, regularly conducts business in this jurisdiction, and the acts and omissions giving rise to Plaintiff's claims emanated from within this jurisdiction.

25. Venue is proper in this jurisdiction because Defendant's principal place of business is in this jurisdiction and the acts and omissions giving rise to Plaintiff's claims emanated from within this jurisdiction.

## FACTUAL ALLEGATIONS

### A. Defendant Stores Consumers' Private Information

26. Defendant is an online telemedicine platform that offers consultation, prescription refill, mental health, and lab testing services.

27. In the ordinary course of its business practices, Defendant stores, maintains, and uses an individual's Private Information, which includes Plaintiff and Class members', including but not limited to an individual's full name, Social Security number ("SSN"), date of birth, driver's license or state identification card number, passport number, physical address, email

address, phone number, and medical and health information.[2]

28. Defendant understands the importance of securely storing and maintaining Private Information. In its Online Privacy Policy, Defendant claims that "[t]he protection of the information that we collect about visitors to the website or app is of the utmost importance."[3]

29. Plaintiff and Class members entrusted their Private Information to Defendant with the reasonable expectation and the mutual understanding that Defendant would fulfill its obligations to safeguard that information and protect it from unauthorized access.

**B. The Data Breach**

30. On January 22, 2026, a threat actor known by the alias "iProfessor" posted a database including over 1.1 million of Defendant's patient records for sale on a dark web forum. The actor claims to have acquired the records from Defendant's network in December 2025.[4]

31. Defendant has not acknowledged the Data Breach or notified impacted individuals that their sensitive personal data has been exposed.

32. Additionally, though Plaintiff and the Class have an interest in ensuring that their information remains protected, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures taken by Defendant to ensure a data breach does not occur again have not been shared with regulators, Plaintiff or Members of the Class.

**C. Defendant Was Aware of the Data Breach Risks**

33. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of Private Information that Defendant knew or should have known would be the target of cyberattacks.

---

[2] *Online Privacy Policy*, CallOnDoc (Oct. 22, 2025), https://www.callondoc.com/en/privacy.
[3] *Id.*
[4] *CallOnDoc Suffers Breach*, supra note 1.

34. In light of recent high-profile data breaches at in the healthcare industry nationwide, Defendant knew or should have known that their electronic records would be targeted by cybercriminals.

35. Defendant had and continues to have obligations created by implied contract, common law, and representations made to Plaintiff and the Class, to keep their PII and PHI private and confidential and to protect it from unauthorized access, disclosure or exfiltration.

36. Plaintiff and the Class provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to employ reasonable care to keep such information confidential and secure from unauthorized access.

37. Data breaches, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and foreseeable to the public and to Defendant.

38. According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take substantial time, money, and patience to resolve.[5] Identity thieves use the stolen PII for a variety of crimes, including but not limited to credit card fraud, telephone or utilities fraud, and bank and finance fraud.[6]

---

[5] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://www.myoccu.org/sites/default/files/pdf/taking-charge-1.pdf.

[6] *Id*. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security

39. The Private Information of Plaintiff and the Class was accessed and taken by cyber criminals for the very purpose of engaging in illegal and unethical conduct, including crimes involving identity theft and fraud, or to otherwise profit by selling their data to other criminals who purchase PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

40. Defendant knew, or should have known, the importance of safeguarding the PII and PHI of Plaintiff and the Class and of the foreseeable consequences that would occur if Defendant's data security systems were breached, including the significant costs that would be imposed on Plaintiff and Class as a result of a breach.

41. Plaintiff and the Class now face years of constant monitoring and surveillance of their financial and personal records. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information as a direct result of the Data Breach.

42. The injuries to Plaintiff and Class were directly and proximately caused by Defendant's own failure to install, implement or maintain adequate data security measures, software and other industry best practices for safeguarding the Private Information of Plaintiff and the Class.

**D. Defendant Failed to Comply with FTC Guidelines**

43. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable and adequate data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

44. In 2022, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[7]

45. The FTC further recommends that businesses not maintain PII longer than is needed; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized access to

[7] Ritchie, J. N. & A., & Jayanti, S.F.-T. and A. (2022, April 26). *Protecting personal information: A guide for business.* Federal Trade Commission. https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Sept. 12, 2025).

consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

48. To prevent and detect cyber-attacks, including the cyber-attack on Defendant's network that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government and FTC, the following measures:

a. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of malware and how it is delivered.

b. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configure firewalls to block access to known malicious IP addresses.

e. Patch operating systems, software, and firmware on devices using a centralized patch management system.

f. Set anti-virus and anti-malware programs to automatically conduct regular scans and/or repairs.

g. Create and manage the use of privileged accounts based on the varying level of accessibility using a principle of least privilege: wherein no users should be assigned administrative access unless absolutely

needed; and those with a need for administrator accounts should only use them, when necessary, such as any internal IT employees.

h. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

i. Disable macro scripts from Microsoft Office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

j. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common malware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

k. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

l. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Execute operating system environments or specific programs in a virtualized environment; and

n. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

49. Defendant was at all times fully aware of its obligation to protect the PII of its employees and clients. Defendant was also aware of the significant repercussions that would

result from its failure to do so.

**E. Defendant Failed to Comply with HIPAA**

50. The Health Insurance Portability and Accountability Act ("HIPAA") requires covered entities to implement reasonable security measures to protect patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

51. HIPAA further prohibits the unauthorized disclosure of protected health information.

52. Defendant is a HIPAA covered entity that provides healthcare services. *See* 45 C.F.R. § 160.12. As a regular and necessary part of its business, Defendant collects and maintains PII and PHI of patients.

53. HIPAA requires Defendant to implement adequate safeguards to prevent unauthorized use or disclosure of private information such as PII and PHI by adopting the requirements set forth in the HIPAA's Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information), and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

54. Defendant is also required to report any unauthorized use or disclosure of that information, including incidents of a data breach "without unreasonable delay and in no case later than 60 days following discovery of the breach."[8] *See* 45 C.F.R. § 164.302.

[8] *Breach Notification Rule*, U.S. Dep't of Health & Hum. Servs., https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last visited Jan. 29, 2026).

55. As a HIPAA covered entity, Defendant assumed legal obligations and knew or should have known that it was responsible for safeguarding Plaintiffs' and Class members' sensitive and private information from unauthorized disclosure.

56. As set forth throughout this Complaint, Defendant did not implement the required safeguards it is required to maintain under HIPAA. Defendant did so with knowledge of its legal duties under HIPAA and of the risks associated with unauthorized access to Plaintiffs' and Class members' PHI.

57. Defendant's HIPPA violations include but are not limited to the following:

a. Failing to notify affected individuals without unreasonable delay and in no case later than 60 days following discovery of the breach. 45 C.F.R. §164.404(b);

b. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits. 45 C.F.R. § 164.306(a)(1);

c. Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of PHI. 45 C.F.R. § 164.306(a)(2);

d. Failing to protect against any reasonably anticipated uses or disclosure of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information. 45 C.F.R. § 164.306(a)(3);

e. Failing to ensure compliance with HIPPA security standards by Defendant's workforce. 45 C.F.R. § 164.306(a)(4);

f. Failing to review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information. 45 C.F.R. § 164.306(e);

g. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights. 45 C.F.R. § 164.312(a)(1);

h. Failing to implement policies and procedures to prevent, detect, contain and correct security violations. 45 C.F.R. § 164.308(a)(1);

i. Failing to identify and respond to suspected or known security incidents and failing to mitigate the harmful effects of security incidents that are known. 45 C.F.R. § 164.308(a)(6)(ii);

j. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI. 45 C.F.R. § 164.530(b); 45 C.F.R. § 164.308(a)(5); and

k. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI. 45 C.F.R. § 164.530(c).

58. As a result of their failure to comply with HIPPA regulations, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach and injuring Plaintiffs and Class members.

**F. PII Holds Value to Cyber Criminals**

59. Information such as names and dates of birth are extremely desirable to cyber criminals. They are not easily destroyed or replaceable and can be easily used to perpetrate acts of identity theft and other types of fraud.

60. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web to obtain PII of other unknown individuals. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and banking details have a price range of $50 to $200.[9]

61. A person's SSN, for example, is among the worst kind of PII to have stolen or otherwise compromised because it may be put to a variety of fraudulent uses and is difficult for an individual to change or otherwise repair once it's compromised. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get

[9] *Here's What Your Data Sells for on the Dark Web,* Experian, (Jun. 20, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

> other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems. [10]

62. What is more, it is no easy task to change or cancel a stolen or compromised Social Security number. An individual cannot obtain a new SSN without significant time, monetary investment, paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of ones SSN is not permitted and the only forms of remediation happens *after* the first incident of misuse; an individual must show evidence of actual, ongoing fraudulent activity to be eligible to submit an application requesting a new SSN with the SSA.

63. The FTC has released its updated publication on protecting PII for businesses, which includes instructions on protecting PII, properly disposing of PII, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

64. General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for years. According to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.
>
> As a result, studies that attempt to measure the harm resulting from data breaches

---

[10] *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Nov. 20, 2025).

cannot necessarily rule out all future harm.[11]

65. Companies recognize that PII is a valuable asset and a valuable commodity, but also necessary throughout the typical course of business with employees and consumers. A "cyber black-market" exists in which criminals openly post stolen SSN and other PII on several dark web Internet websites. The stolen PII of Plaintiff and the Class has a high value on both legitimate and black markets.

66. Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

67. As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use SSNs to create false bank accounts or file fraudulent tax returns or other tax related forms and documents using an alias of their victim. Class members whose SSN have been compromised in the Data Breach now face a real, present, imminent and substantial risk of identity theft and other problems associated with the disclosure of their SSN and will need to monitor their credit and tax filings for an indefinite duration.

68. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because those victims can file disputes, cancel or close credit and debit cards and/or accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not nearly impossible, to change.

[11] *See* https://www.gao.gov/assets/gao-07-737.pdf (last visited Jan. 29, 2026).

69. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[12]

70. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police or other emergency medical services. An individual may not know that their driver's license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

**G. Plaintiff's and Class Members' Damages**

71. Defendant has failed to provide any compensation for the unauthorized release and disclosure of Plaintiff's and the Class's Private Information or even acknowledge the Data Breach.

72. Plaintiff and the Class have been damaged by the compromise of their Private Information in the Data Breach.

73. Plaintiff and the Class presently face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

74. Plaintiff and the Class face substantial risk of being targeted, now and in the future, by phishing, data intrusion, and other illegality based on their PII being compromised in

---

[12] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Jan. 29, 2026).

the Data Breach as potential fraudsters could use the information garnered to target such schemes more effectively against Plaintiff and the Class.

75. Plaintiff and the Class may also incur out-of-pocket costs for implementing protective measures such as purchasing credit monitoring fees, credit report fees, credit freeze fees, and other similar costs directly or indirectly related to the Data Breach.

76. Plaintiff and the Class also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in data breach cases.

77. Plaintiff and the Class have spent and will continue to spend significant amounts of uncompensated time monitoring their financial accounts, medical accounts, sensitive information, credit score, and other records for misuse.

78. Plaintiff and the Class have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

79. Moreover, Plaintiff and the Class have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of proper and adequate security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password protected.

80. Further, as a result of Defendant's conduct, Plaintiff and the Class are forced to live with the anxiety and fear that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, whether physically or

virtually, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

81. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and the Class have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm because of the Data Breach.

### H. Plaintiff Adam Bettencourt's Experience

82. Plaintiff Adam Bettencourt has been a patient of Defendant since 2022.

83. Plaintiff provided his Private Information to Defendant in the course of doing business with Defendant.

84. Plaintiff entrusted his PII and PHI to Defendant with the reasonable expectation and understanding that Defendant, or its agents, would take industry-standard precautions to protect, maintain, and safeguard that information from unauthorized access or disclosure, and would timely notify him of any data security incidents involving his Private Information. Plaintiff would not have allowed Defendant to collect and maintain his Private Information had he known that Defendant would fail to take reasonable steps to safeguard it.

85. Since the Data Breach, Plaintiff has noticed a surge in spam calls.

86. On January 21, 2026, approximately one month after the Data Breach, Plaintiff received a call from "GovX" offering him a $120 refund.

87. Following the caller's instructions, Plaintiff created accounts in two cash apps, including WorldRemit, and added his credit and debit card information. Shortly thereafter, thousands of dollars were sent from his cards to a Kenyan M-PESA account.[13]

88. Plaintiff has since been working with U.S. Bank to stop and/or reverse the

---

[13] M-PESA is an online money transfer service. *About Us*, M-PESA, https://www.m-pesa.africa/about-us (last visited Jan. 29, 2026).

transfers. The bank was able to stop the credit card charges, but it has yet to reverse approximately $3,000 in debit card transfers.

89. Plaintiff has been forced to spend significant time dealing with and responding to the direct consequences of the Data Breach, including making telephone calls, researching the incident, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This represents uncompensated time that has been lost forever and cannot be recaptured.

90. Plaintiff stores all documents containing his PII and PHI in a safe and secure location. He also diligently chooses unique usernames and passwords for the online accounts that he maintains.

91. Plaintiff has suffered actual injury in the form of damages to, and diminution in, the value of his PII and PHI—an intangible form of property that he entrusted to Defendant. His PII and PHI were compromised in, and has been diminished as a result of, the Data Breach.

92. Plaintiff has also suffered actual injury in the form of lost time, opportunity costs, annoyance, interference, and inconvenience as a result of the Data Breach. He has experienced anxiety and increased concern due to the loss of his privacy and the substantial risk of fraud and identity theft that he now faces.

93. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse of his PII and PHI.

94. Knowing that thieves stole his Private Information and that his Private Information will likely be sold on the dark web has caused Plaintiff great anxiety.

95. Plaintiff has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains in the possession of Defendant, is protected and safeguarded from future data breaches.

96. As a result of the Data Breach, Plaintiff is presently, and will continue to be, at a heightened risk for financial fraud, identity theft, and other forms of misuse of his Private Information, together with the attendant damages, for years to come.

## CLASS ACTION ALLEGATIONS

97. Plaintiff brings this class action individually and on behalf of all persons similarly situated, pursuant to 28 U.S.C. § 1332(d).

98. The nationwide Class that Plaintiff seeks to represent is defined as follows:

> All persons in the United States whose Private Information was exposed in the Data Breach (the "Class").

99. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

100. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

101. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

102. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. The Class includes those individuals whose personal data was compromised by the Data Breach. The exact number of Class members is in the possession and control of Defendant and will be ascertainable through discovery.

103. **Commonality.** There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any questions that may affect only individual Class members, including, without limitation:

a. Whether Defendant unlawfully maintained, lost or disclosed Plaintiff's and the Class's PII and PHI;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant owed a duty to Class to safeguard their PII and PHI;

e. Whether Defendant breached duties to Class to safeguard their PII and PHI;

f. Whether cyber criminals obtained Class's PII and PHI in the Data Breach;

g. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h. Whether Defendant owed a duty to provide Plaintiff and Class timely notice of this Data Breach, and whether Defendant breached that duty;

i. Whether Plaintiff and Class suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant's conduct violated state law; and

l. Whether Plaintiff and Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

104. **Typicality**. Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all proposed Class members, had his PII and PHI compromised, breached, or otherwise stolen in the Data Breach. Plaintiff and the Class were injured through the uniform misconduct of Defendant, described throughout this Complaint, and assert the same claims for

relief.

105. **Adequacy**. Plaintiff and counsel will fairly and adequately protect the interests of Plaintiff and the proposed Class. Plaintiff retained counsel who are experienced in class action and complex litigation, particularly those involving data breaches, as is at issue in this class action complaint. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of other Class members.

106. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiff and the Class have been harmed by Defendant's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct and/or inaction. Plaintiff knows of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

107. All members of the proposed Class are readily ascertainable. Defendant has access to the names, addresses, and/or email addresses of Class members affected by the Data Breach.

108. Finally, class certification is appropriate. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**(On behalf of Plaintiff and the Class)**

109. Plaintiff and the Class re-allege and incorporate all foregoing paragraphs.

110. Plaintiff and the Class entrusted Defendant with their Private Information.

111. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and not disclose their Private Information to unauthorized third parties.

112. Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in obtaining, using, maintaining and protecting their Private Information from unauthorized third parties.

113. The legal duties owed by Defendant to Plaintiff and the Class include, but are not limited to the following:

a. To exercise reasonable care in procuring, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiff and the Class in Defendant's possession;

b. To protect Private Information of Plaintiff and the Class in Defendant's possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

c. To implement processes and software to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and Class of the Data Breach.

114. Defendant breached its duties to Plaintiff and the Class. Defendant knew or

should have known the risks of collecting and storing PII and PHI and the importance of maintaining secure systems, especially in light of the fact that data breaches have recently been prevalent.

115. Defendant knew or should have known that its security practices did not adequately safeguard the Private Information of Plaintiff and the Class.

116. Through Defendant's acts and omissions described in this Complaint, including Defendant's failure to provide adequate security measures and its failure to protect the Private Information of Plaintiff and the Class from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and the Class during the period it was within Defendant's possession and control.

117. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information.

118. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class.

119. Defendant's own conduct created a foreseeable risk of harm to an individual, including Plaintiff and the Class. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

120. Defendant was in a position to protect against the harm suffered by Plaintiff and

the Class as a result of the Data Breach.

121. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

122. Defendant breached the duties it owes to Plaintiff and Class in several ways, including:

a. Failing to implement adequate security systems, protocols, and practices sufficient to protect individuals' Private Information and thereby creating a foreseeable risk of harm;

b. Failing to comply with the minimum industry data security standards during the period of the Data Breach;

c. Failing to act despite knowing or having reason to know that its systems were vulnerable to attack; and

d. Failing to timely and accurately disclose to individuals that their Private Information had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web.

123. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

124. Due to Defendant's misconduct, Plaintiff and the Class are entitled to credit monitoring at a minimum. The Private Information taken in the Data Breach can be used for identity theft and other types of financial fraud against Plaintiff and the Class.

125. Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year.

126. As a result of Defendant's negligence, Plaintiff and Class suffered injuries that include:

a. the lost or diminished value of Private Information;

b. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

c. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account;

d. the continued risk to their Private Information, which may remain for sale on the dark web and is in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in their continued possession; and

e. future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class, including ongoing credit monitoring.

127. These injuries were reasonably foreseeable given the history and uptick of data security breaches of this nature. The injury and harm that Plaintiff and the Class suffered was the

direct and proximate result of Defendant's negligent conduct.

**COUNT II**
**Negligence *Per Se***
**(On behalf of Plaintiff and the Class)**

128. Plaintiff and the Class re-allege and incorporate all foregoing paragraphs.

129. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

130. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and comply with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable harm.

131. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.304, 45 C.F.R. § 164.306(a) (1-4), 45 C.F.R. § 164.312(a)(1), 45 C.F.R. § 164.308(a)(1)(i), 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

132. Defendant's violations of Section 5 of the FTC Act and HIPAA constitute negligence *per se*.

133. Plaintiff and the Class are within the class of persons that the FTCA and HIPAA were intended to protect.

134. The harm that occurred as a result of the Data Breach is the type of harm the FTCA and HIPAA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

135. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual instances of identity theft or fraud; (ii) the compromise, publication, and/or theft of their PII and PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud, identity theft; and/or other various forms of fraud (v) costs associated with placing or removing freezes on credit reports; (vi) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

136. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect

the PII and PHI in its continued possession.

137. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiff, on behalf of himself and the Class)**

138. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

139. Plaintiff and Class members gave Defendant their Private Information in confidence, believing that Defendant would protect that information. Plaintiff and Class members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff and Class members' Private Information created a fiduciary relationship between Defendant and Plaintiff and Class members. In light of this relationship, Defendant must act primarily for the benefit of Plaintiff and the Class members, which includes safeguarding and protecting Plaintiff and Class members' Private Information.

140. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the system containing Plaintiff and Class members' Private Information, failing to comply with the data security guidelines set forth by the FTCA and with HIPAA's mandates, and otherwise failing to safeguard Plaintiff and Class members' Private Information that it collected.

141. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) substantially increased risks of identity theft, justifying expenditures for protective and

remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their Private Information; (iv) breach of the confidentiality of their Private Information; (v) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

142. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

143. Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

144. Plaintiff and Class Members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class members.

**COUNT IV**
**BREACH OF CONTRACT**
**(Plaintiff, on behalf of himself and the Class)**

145. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

146. Defendants entered into express or implied contracts with their patients, including Plaintiff and Class members.

147. Under these contracts, Plaintiff and Class members provided Defendant with their Private Information.

148. In exchange, Defendant agreed to implement adequate security measures to

safeguard the Private Information of these customers, including Plaintiff and the Class.

149. Defendant knew that if it were to breach these contracts, its patients, including Plaintiff and the Class members, would be harmed.

150. Defendant breached its contracts by failing to safeguard Plaintiff and Class members' Private Information.

151. As a direct and proximate result of Defendant's breach of these contracts, Plaintiff and Class members have suffered and will suffer injury including, but not limited to: (i) substantially increased risks of identity theft, justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their Private Information; (iv) breach of the confidentiality of their Private Information; (v) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

152. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

153. Plaintiff and Class members are entitled to damages incurred as a result of Defendant's breach of contract.

**COUNT V**
**UNJUST ENRICHMENT**
**(Plaintiff, on behalf of himself and the Class)**

154. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

155. This count is pleaded in the alternative to Plaintiff's breach of contract claim (Count IV).

156. Plaintiff and Class members conferred a monetary benefit upon Defendant in the form of their sensitive and private information.

157. In exchange, Plaintiff and Class members should have received from Defendant the benefit of its online telemedicine services and should have had their Private Information protected with adequate data security procedures.

158. Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members by acquiring and/or collecting their Private Information. Defendant appreciated and benefitted from the receipt of Plaintiff and Class members' Private Information in that it used the Private Information and profited from the healthcare transactions in furtherance of its business.

159. Defendant acquired Plaintiff and Class members' Private Information through inequitable means in that it failed to disclose the inadequate data security procedures previously alleged herein.

160. Defendant should not be permitted to retain the Private Information belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself at the expense of Plaintiff and Class members' safety and that were otherwise mandated by federal, state, and local laws and industry standards.

161. Defendant unjustly enriched itself by using the Private Information acquired from Plaintiff and Class members to further its business.

162. Notably, Defendant chose not to use any payments to enhance their data security procedures.

163. Had Plaintiff and Class members known of Defendant's inadequate security

measures, they would not have provided their Private Information to Defendant to collect and maintain.

164. Under principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained from Plaintiff and Class members and should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

165. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

166. Plaintiff and Class members are entitled to equitable relief as a result of the Data Breach.

**COUNT VI**
**INVASION OF PRIVACY**
**(Plaintiff, on behalf of himself and the Class)**

167. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

168. Defendant invaded Plaintiff and Class members' right to privacy by allowing the unauthorized access to Plaintiff and Class members' Private Information and by negligently maintaining the confidentiality of Plaintiff and Class members' Private Information, as set forth in this Complaint. Defendant further invaded Plaintiff and Class members' privacy by permitting third parties to access, disclose and publish Plaintiff and Class members' Private Information online.

169. The intrusion was offensive and objectionable to Plaintiff and Class members, and to the reasonable person, in that Plaintiff and Class members' Private Information was disclosed

without prior written authorization of Plaintiff and other Class members.

170. The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff and the Class members provided and disclosed their Private Information to Defendant privately with an intention that their Private Information would be kept confidential and protected from unauthorized disclosure. It was reasonable for Plaintiff and the Class members to believe that such information would be kept private and would not be disclosed without their written authorization.

171. As a direct and proximate result of Defendant's acts described throughout this Complaint, Plaintiff's and the Class members' Private Information was viewed, distributed, and used by persons without prior written authorization, and Plaintiff and the Class members suffered damages as described herein.

172. Defendant has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class members' Private Information with a willful and conscious disregard of Plaintiff's and the Class members' right to privacy.

173. Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and Defendant may freely treat Plaintiff and Class members' Private Information with sub-standard and insufficient protections without intervention by this Court.

174. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and the Class members great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons.

## COUNT VII
## DECLARATORY JUDGMENT
## (Plaintiff, on behalf of himself and the Class)

175. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

176. As previously alleged, Plaintiff and Class entered into contracts that required Defendant to provide adequate security for the Private Information it collected. As previously alleged, Defendant owes duties of care to Plaintiff and Class members that require it to adequately secure customer data.

177. Defendant still possesses Private Information pertaining to Plaintiff and Class members.

178. Defendant has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems.

179. Accordingly, Defendant has not satisfied its legal duties to Plaintiff and Class members. In fact, now that Defendant's lax approach towards data security has become public, the Private Information in its possession is more vulnerable than previously.

180. Actual harm from the ongoing threat of fraud and identity theft has arisen in the wake of the Data Breach.

181. Plaintiff, therefore, seeks a declaration that (a) Defendant's existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. engaging third-party security auditors and internal personnel to run automated security monitoring;

c. auditing, testing, and training its security personnel regarding any new or modified procedures;

d. segmenting customer data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant systems;

e. purging, deleting, and destroying in a reasonable secure manner customer data not necessary for its provisions of services;

f. conducting regular database scanning and securing checks;

g. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. educating its customers about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps Defendant customers must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests judgment against Defendant and that the Court grant the following:

1. For an order certifying the Class and appointing Plaintiff and his counsel to represent the Class.

2. For an order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of the Private

Information belonging to Plaintiff and the Class.

3. For injunctive relief requiring Defendant to:

a. Engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors.

b. Engage third-party security auditors and internal personnel to run automated security monitoring.

c. Audit, test, and train its security personnel regarding any new or modified procedures.

d. Segment their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems.

e. Conduct regular database scanning and security checks.

f. Routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

g. Purchase credit monitoring services for Plaintiff and the Class for a period of ten years; and

h. Meaningfully educate Plaintiff and the Class about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

4. An order instructing Defendant to purchase or provide funds for credit monitoring services for Plaintiff and all Class members.

5. An award of compensatory, statutory, nominal and punitive damages, in an amount to be determined at trial.

6. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct.

7. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law; and

8. Any and all such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands this matter be tried before a jury.

Dated: January 30, 2026

Respectfully submitted,

By: */s/ Leigh S. Montgomery*
Leigh S. Montgomery
Texas Bar No. 24052214
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
E: lmontgomery@eksm.com

and

Steven A. Schwartz*
Beena M. McDonald*
Alex M. Kashurba*
Holly E. Jones*
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*sas@chimicles.com*
*bmm@chimicles.com*
*amk@chimicles.com*
*hej@chimicles.com*

**pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*